**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
**CITY OF BRISTOL PENSION FUND,**     )
**On Behalf of Itself and All Others**     )
**Similarly Situated,**     )
)
      **Plaintiff,**     )
)
      **v.**     )         **Civil Action No.**
)         **12-11654-FDS**
**VERTEX PHARMACEUTICALS,**     )
**et al.,**     )
)
      **Defendants.**     )
_____)

**MEMORANDUM AND ORDER ON MOTION FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL**

**SAYLOR, J.**

      This is a putative class action involving alleged violations of the Securities Exchange Act

of 1934.  The City of Bristol Pension Fund ("CBPF") has brought suit, on behalf of a class of

similarly situated persons, against Vertex Pharmaceuticals, Inc., and a number of Vertex

employees.  Plaintiff contends that class members were harmed when they purchased Vertex's

common stock at prices that were artificially inflated by the company's false and misleading

statements about its products.  Plaintiff also contends that a number of Vertex executives

personally profited by selling millions of dollars of Vertex stock while the stock's value was

artificially inflated.

      CBPF has moved for (1) appointment as lead plaintiff and (2) approval of its selection of

Scott+Scott LLP as lead counsel, pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of

1934.  15 U.S.C. § 78u-4(a)(3)(B).  Defendants oppose CBPF's appointment as lead plaintiff on

the grounds that it lacks standing to bring the claims at issue in this case.  For the reasons set

forth below, plaintiff's motion will be granted, CBPF will be appointed lead plaintiff, and

Scott+Scott LLP will be approved as lead counsel.

## I.     <u>Background</u>

Unless otherwise noted, all facts are stated as set forth in the complaint.

Vertex is a biotechnology company that researches, develops, and commercializes

medicine to treat a variety of illnesses.  (Compl. ¶ 19).  The company's products include

prescription medicines used to treat, among other things, hepatitis C, HIV, and cancer.  (*Id.*).

Vertex is based in Cambridge, Massachusetts.  (Compl. ¶ 2).

One of Vertex's products is the drug Kalydeco, which was approved by the Food and

Drug Administration for use in treating cystic fibrosis in early 2012.[1]  (Compl. ¶¶ 4, 20).  The

drug was approved for use among patients with a specific genetic mutation—a group that

accounts for approximately 4% of those with cystic fibrosis.  (Compl. ¶ 20).  In early 2012,

Vertex also began exploring the combination of Kalydeco with other medications or therapies to

treat patients with more common forms of the disease.  (*Id.*).

On May 7, 2012, Vertex announced that it had achieved significant results in a clinical

study that combined the experimental drug VX-809 and Kalydeco in the treatment of people

with cystic fibrosis.  (Compl. ¶ 23).  The results indicated a dramatic absolute improvement in

lung function over a 56-day period.  (*Id.*).  Vertex's stock price, which had closed at $37.41 per

share on May 4, closed at $58.12 per share on May 7.  (Compl. ¶ 25).  In the following weeks,

---

[1] Cystic fibrosis is a fatal lung disease that causes life-threatening lung infections and digestion problems. (Compl. ¶ 21).  Approximately 30,000 people in the United States have cystic fibrosis.  (*Id.*).  There is currently no cure for the disease.  (*Id.*).

the company's stock value climbed as high as $64.94. (Compl. ¶ 27). During this time, the City of Bristol alleges that the individual defendants collectively sold tens of millions of dollars in stock. (*Id.*).

On May 29, 2012, Vertex issued a statement that indicated that the results of the study were not as positive as the company's initial statements suggested. (Compl. ¶¶ 29-33). On May 29, the company issued a downward correction of the improvements in lung function that had previously been released. (Compl. ¶ 31). On May 29, the stock closed at a price of $57.80 per share. (Compl. ¶ 33).

The City of Bristol Pension Fund purchased 30,000 shares of Vertex common stock on May 30, 2012. (Compl., Sched. A). The city paid a price per share of $60.16. (*Id.*).

On June 28, 2012, Vertex announced the final results of the clinical study. The results were not presented based on absolute improvement over a 56-day period; rather, they set forth the absolute improvement from day 28 to day 56. (Compl. ¶ 34). News coverage of the results indicated that investor skepticism about the data "sparked a sharp selloff of company shares." (Compl. ¶ 35). Vertex's stock price fell from a close of $61.11 on June 27, 2012, to a close of $51.18 on June 28. (Compl. ¶ 36).

On September 6, 2012, CBPF filed a complaint on behalf of all purchasers of Vertex common stock between May 7, 2012, and June 28, 2012. The complaint contends that Vertex and the individual defendants violated federal securities law by making false and misleading public statements concerning Vertex products. It also contends that the named individual defendants, all Vertex executives, personally profited by selling millions of dollars of Vertex stock while the stock's value was artificially inflated. On November 5, 2012, CBPF moved this

Court to appoint it as lead plaintiff, and to approve CBPF's selection of Scott+Scott LLP as lead counsel for the class.

## II.   <u>Legal Standard</u>

The Private Securities Litigation Reform Act ("PSLRA") sets forth detailed procedures for bringing and maintaining securities class actions.  The provisions are intended to increase the chances that securities fraud cases are brought by investors who have substantial and genuine interests in the litigation.  *See In re Party City Sec. Litig.*, 189 F.R.D 91, 103 (D.N.J. 1999) ("Specifically, the [PSLRA] provides a method for identifying the plaintiff or plaintiffs who are mostly strongly aligned with the class of shareholders, and most capable of controlling the selection and activities of counsel.")

Under the PSLRA, a plaintiff seeking to represent a class must provide a sworn certification at the time the complaint is filed that:

(1) states that plaintiff has reviewed and authorized the complaint;

(2) states that plaintiff did not purchase the security at issue in the complaint at the direction of counsel or in order to participate in a lawsuit;

(3) states that plaintiff is willing to serve as a representative party and participate in trial;

(4) sets forth all of plaintiff's transactions involving the security that is the subject of the complaint during the class period;

(5) identifies any other action filed in the previous three years in which plaintiff has sought to be a class representative; and

(6) states that plaintiff will not accept payment for being the representative party, beyond a pro rata share of the recovery, without court approval.

15 U.S.C. § 78u-4(a)(2).

A plaintiff who brings such an action must, within 20 days of filing the complaint,

publish notice of the pendency of the class action in a widely-circulated, national business-oriented publication or wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any other person or group of persons who are members of the putative class may apply to the court to be appointed as lead plaintiff in the action, whether or not they have filed a complaint. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II).

Once the 60-day period following publication of notice has run, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff in any such action is the person or persons that:

 (1) has either filed the complaint or made a motion in response to notice by the party who filed the complaint;

(2) has the largest financial interest in the relief sought by the class; and

(3) otherwise satisfies the requirements of Fed. R. Civ. Proc. Rule 23.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may only be rebutted upon proof by a member of the purported class that the person identified as the most adequate plaintiff either will not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**III.** **Analysis**

Plaintiff CBPF has now moved for appointment as lead plaintiff and approval of its selection of Scott+Scott LLP as lead counsel. Plaintiff is the only purported class member who has so moved. Defendant opposes the motion on the grounds that plaintiff lacks standing.

Plaintiff has met the PLSRA's certification requirements. Plaintiff filed a certification

signed by Glenn S. Klocko, the comptroller and trustee of CBPF, along with its initial complaint. That certification set forth all statements and information required by the PLSRA at the time the complaint is filed.  Defendant does not challenge the sufficiency of the certification.

Plaintiff has also complied with the notice requirement.  On September 6, 2012, plaintiff published notice of the pendency of this action on *Globe Newswire*, a national, business-oriented newswire service.  (Decl. of Joseph P. Gugliemo, Ex. A).  Defendant does not challenge the sufficiency of the notice.

Because the certification and notice requirements have been met, the Court must next designate a lead plaintiff and approve lead counsel.

### A.    <u>Presumed Lead Plaintiff</u>

Under the PSLRA, the Court must presume that the lead plaintiff is the person, or group of persons, who (1) filed the complaint or made a motion to be lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, CBPF meets all statutory requirements that govern the Court's choice of presumed lead plaintiff.  CBPF filed the complaint, and no other member of the purported class has made any competing motion in response to notice.

CBPF appears to have the largest financial interest in the relief sought.  CBPF purchased 30,000 shares of Vertex stock at $60.16 per share on May 20, 2012, spending a total of $1,804,800.  (Guglielmo Decl, Ex. B).  No other party has come forward with any allegations of a larger financial interest in relief.

CBFP otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure, at least for the purposes of the present motion.  Rule 23 provides that a party may serve as a class representative only if four requirements are met:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff.  *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009).  These findings need only be "preliminary."  *Id.*

At this stage of the suit, both requirements are sufficiently met.  As a preliminary matter, plaintiff's claims appear to be typical of the putative class's claims, in that they arise from the same course of events, and involve the same legal theory as to the claims of the rest of the class.  *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001).[2]  Plaintiff also appears capable of adequately protecting the interests of the class, in that plaintiff possesses "common interests and an absence of conflict with the class members and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation."  *Id.*

Thus, CBPF is the presumed lead plaintiff.

## B.    Defendant's Standing to Rebut this Presumption

The presumption in favor of CBPF as lead plaintiff may only be rebutted on proof "by a

---

[2] Defendants point out that CBPF purchased its shares of Vertex stock after defendants' corrective statement on May 29, and thus may not be similarly situated to all members of the putative class.  The Court takes no position as to whether this argument, or any of defendants' other challenges to plaintiff's standing, may prove meritorious at a later stage in the suit.  However, based on the record before the Court at this early stage, CBPF's claim is sufficiently typical to satisfy the standard for designation of the lead plaintiff.

member of the purported plaintiff class" that the presumptive lead plaintiff will not fairly and

adequately protect the interests of the class or is subject to a unique defense.  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).

Numerous courts have interpreted this language to mean that only a member of the

putative class may challenge a petition for lead plaintiff status.  *See, e.g., Greebel v. FTP

Software*, 939 F. Supp. 57, 60 (D. Mass. 1996) ("The text of [15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)

clearly indicates that this issue is one over which only potential plaintiffs may be heard.");

*Howard Gunty Profit Sharing Plan v. Carematrix Corp.*, 354 F. Supp. 2d 18, 22, n.2 (D. Mass,

2000) (". . . only other plaintiffs have standing to challenge petitions for lead plaintiff status").

Of course, defendants have no incentive to protect the best interests of a purported plaintiff class

in opposing or supporting a plaintiff's designation as lead plaintiff.  *See, e.g,. In re Merck & Co.

Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (noting that lack of standing for defendants "makes

sense because defendants will rarely have the best interests of the class at heart.").

Nevertheless, defendant opposes CBPF's application.  Defendant essentially contends

that CBPF lacks standing, and therefore should be disqualified from serving as lead plaintiff.  In

light of the language of the statute, this is not the appropriate stage in the proceedings to consider

such an argument.  Accordingly, CBPF's motion for appointment as lead plaintiff will be

granted.[3]

### C.    Choice of Counsel

Pursuant to § 21D(a)(3)(B)(v) of the Exchange Act, the presumptive lead plaintiff may

---

[3] It is certainly possible that future developments in the litigation will require that a different lead counsel be designated, or that class certification be denied altogether.  At this stage, however, and with no factual record, the Court can only make preliminary determinations.

select and retain counsel to represent the purported plaintiff class.  15 U.S.C. §77u-4(a)(3)(B)(v).

Lead plaintiff's choice of counsel is subject to approval by the court.  *Id.*

CBPF has chosen the law firm of Scott+Scott LLP.  This Court is aware of no reason why it should not approve of plaintiff's choice.  It appears that Scott+Scott has handled a number of shareholder and securities class actions, and has recovered significant awards for their clients.  The firm also appears to have sufficient resources to handle the case.  (Guglielmo Decl., Ex. C).  Accordingly, the Court will approve of CBPF's selection of Scott+Scott as lead counsel.

## IV.      Conclusion

For the reasons stated above, plaintiff's motion is GRANTED.  The City of Bristol Pension Fund is appointed as lead plaintiff, and Scott+Scott LLP is approved as lead counsel in this case.

**So Ordered.**

       /s/ F. Dennis Saylor
      F. Dennis Saylor IV
      United States District Judge

Dated:   December 21, 2012