**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CITY OF BRISTOL PENSION FUND, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERTEX PHARMACEUTICALS, INC., JOSHUA BOGER, Ph.D., JEFFREY LEIDEN, M.D., Ph.D., PETER MUELLER, Ph.D., PAUL SILVA, ELAINE ULLIAN, AND NANCY J. WYSENSKI,<br><br>Defendants. | No. 1:12-cv-11654-FDS |

**MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY AND AMEND JUDGMENT, TO PERMIT FILING OF A SECOND AMENDED COMPLAINT, AND TO ALLOW IBEW NO. 8 TO INTERVENE**

**TABLE OF CONTENTS**


FACTUAL BACKGROUND ... 2

PROCEDURAL BACKGROUND ... 4

ARGUMENT ... 5

I. THE COURT SHOULD CLARIFY ITS ORDER TO MAKE CLEAR THAT THE COURT DID NOT INTEND TO DISMISS THIS ACTION WITH PREJUDICE, AND/OR SHOULD AMEND THE ORDER TO PERMIT THE FILING OF THE PROPOSED SAC. ... 5

II. BECAUSE THE PROPOSED SAC CURES ANY DEFICIENCIES WITH RESPECT TO THE CLAIMS OF THOSE WHO PURCHASED BETWEEN MAY 7 AND MAY 29, 2012, LEAVE TO AMEND SHOULD BE GRANTED. ... 7

A. There Is No Substantial Reason To Deny Leave To Amend. ... 7

B. Leave To Amend Is Not “Futile”. ... 8

C. Policy Concerns, Including the Protection of the Interests of Thousands of Absent Class Members, Weigh Strongly in Favor of Granting Leave to Amend. ... 9

III. THE COURT SHOULD GRANT THE MOTION TO INTERVENE ... 11

CONCLUSION ... 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**


*ACA Financial Guaranty Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) ....................7, 9, 10

*Barry v. Bowen*,
825 F.2d 1324 (9th Cir.1987) ....................6

*Belizan v. Herson*,
434 F.3d 579 (D.C. Cir. 2006) ....................10

*Caterino v. Barry, Teamsters Local Union No. 122*,
922 F.2d. 37 (1st Cir. 1990) ....................11

*Culbreath v. Dukakis*,
630 F.2d 15 (1st Cir. 1980) ....................11

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................10

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ....................10

*First Am. Corp. v. Foster*,
51 F.R.D. 248 (N.D. Ga. 1970) ....................13

*Herman v. New York Metro Area Postal Union*,
No. 97 Civ. 6839, 1998 WL 214787 (S.D.N.Y. Apr. 30, 1998) ....................13

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
99-MD-1309, 2002 WL 31371945 (D. Minn. Oct. 7, 2002) ....................13

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986) ....................9

*Marie v. Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005) ....................6

*McCausland v. Shareholders Management Co.*,
52 F.R.D. 521 (S.D.N.Y. 1971) ....................13

*Menard v. CSX Transp., Inc.*,
540 F. Supp. 2d 421 (D. Mass. 2012) ....................8

*New England Data Serv., Inc. v. Becher*,
829 F.2d 286 (1st Cir. 1987) .......... 9

*Ruiz Rivera v. Pfizer Pharm., LLC*,
521 F.3d 76 (1st Cir. 2008) .......... 5

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) .......... 13

*United States ex rel. Poteet v. Bahler Medical, Inc.*,
619 F.3d 104 (1st Cir. 2010) .......... 9

**STATUTES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
Rule 9(b) .......... 8, 9
Rule 12(b)(6) .......... 8
Rule 15(a) .......... *passim*
Rule 24 .......... 1, 2, 11, 12
Rule 59(e) .......... 1, 2, 5, 6

Plaintiff City of Bristol Pension Fund ("Plaintiff" or "Bristol") and proposed Plaintiff-Intervener Local No. 8 IBEW Retirement Plan & Trust ("Plaintiff-Intervener" or "Local No. 8") (together with Bristol, "Movants") have respectfully moved under Rule 59(e) of the Federal Rules of Civil Procedure to have this Court amend and/or clarify its March 31, 2014 Order Granting Defendants' Motion to Dismiss and to permit Movants to file a Second Amended Complaint (the "SAC") pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Furthermore, Movants have jointly moved the Court to allow intervention by Local No. 8 under Rule 24(a) and (b) of the Federal Rules of Civil Procedure.

As detailed below, this Court recently dismissed Plaintiff Bristol's complaint, noting that while Defendants ***did*** make at least one false and misleading misstatement, Bristol lacked standing to pursue potential injuries made due to that misstatement. *See* Memorandum and Order, ECF No. 61 dated March 31, 2014 (the "Order"). In so ruling, it is unclear whether the Court intended to dismiss the case with or without prejudice. Therefore, in an abundance of caution, Plaintiff Bristol and proposed Plaintiff-Intervener Local No. 8 jointly request the following relief from the Court:

- Clarification as to whether the order dismissing the applicable complaint was ***with*** or ***without*** prejudice;

- To the extent the Court did intend to dismiss the case with prejudice, reconsideration and/or amendment of the judgment under Rule 59(e) to permit the filing of the proposed SAC;

- Leave to file, under Rule 15(a), the proposed SAC which: (a) would add proposed Plaintiff-Intervener Local No. 8 as a plaintiff and thereby cure the "lack of a plaintiff with standing" defect identified by the Court's Order, and (b) cure the other defects identified by that Opinion; and

- Allow proposed Plaintiff-Intervener Local No. 8 to intervene as a party to the action to assert claims that, under the Court's Order, Plaintiff Bristol lacks standing to assert.

Movants have satisfied the requirements of both Rule 59(e)(to the extent it even applies) and of Rule 15(a) in that they seek to introduce parties and factual allegations that cure any defects the Court may have noted in prior pleadings, at least with respect to the claims of Vertex investors who purchased their shares prior to what the Court held to be a corrective disclosure by Defendants on May 29, 2012. Opinion at 2. Furthermore, Plaintiff-Intervener satisfies the mandates for intervention under Rule 24 and timely makes this application. Therefore, Plaintiff Bristol and Plaintiff-Intervener Local No. 8 respectfully request that this Court grant their joint Motion to Clarify and Amend Judgment, to Permit Filing of the Second Amended Consolidated Complaint, and to Allow IBEW No. 8 to Intervene (the “Motion”).

## **FACTUAL BACKGROUND**

This case concerns a classic “pump and dump” scheme in violation of the anti-fraud provisions of the Securities Exchange Act of 1934 (the “Exchange Act”). Defendants, in an effort to resurrect Vertex Pharmaceuticals, Inc. (“Vertex” or the “Company”), misreported interim results for an ongoing study of combination medications to treat Cystic Fibrosis (“CF”). When the reality of those test results was revealed, the Company’s stock price plummeted. However, in the interim, Defendants profited from the buoyed stock price by selling massive amounts of their own shares of Company stock.

As background, Vertex had previously suffered more than a 40% decrease in stockholder value after experiencing major losses in the Hepatitis C drug market and, in 2012, was attempting to recreate itself in the CF market. To that end, Vertex received Food and Drug Administration (“FDA”) approval for the drug Kalydeco to be used in the treatment of CF, a fatal lung disease. However, Kalydeco alone is not effective on the vast majority of CF patients.

Therefore, in 2012, Vertex began to seek to combine Kalydeco with another medication, VX-809.

In 2012, Vertex started its Phase II trial of VX-809 and Kalydeco in combination by enrolling 108 patients for the study. The CF patients were divided into various study groups – those given a placebo versus varying dosages of VX-809, and a group of patients having a rarer form of CF. In the end, only about 20 of those patients (on the highest dosage of VX-809) proved relevant to a possible conclusion that the combination treatment might be effective. Therefore, the announced interim results were based on a very small number of patients whose test results were easily misunderstood or manipulated.

On May 7, 2012, Vertex suddenly announced "interim results" of the Kalydeco/VX-809 study in a press release touting "significant improvements in lung function" and reporting that half of the study patients had completed 56 days of treatment, or that 37 non-placebo patients had completed 28 days of VX-809 and 29 days of Kalydeco. The press release went on to report that ***46% of patients experienced an absolute improvement from baseline to Day 56 in lung function of 5 percentage points or more, and that approximately 30% experienced an absolute improvement from baseline to Day 56 of 10 percentage points or more.*** In that same press release, Vertex executive Dr. Christopher Wright proclaimed that these results "exceeded" expectations and were so good that it led the Company to want to move forward with a pivotal study "as quickly as possible."

That same day, Defendants held an investors conference call to further tout the unexpected results. Participants on that conference call made the following additional statements:

- Defendant Peter Mueller, the Chief Scientific Officer, stated that the results were "really really fantastic" and that he "ha[s] never seen anything like this."
- Defendant Jeffrey Leiden, CEO, announced that the results allowed them to "accelerate" Vertex's investment into the next stage and that there was a long-term strategic aspect to the data from a "corporate commercial perspective" because the results represented "fruits" of their investment.
- Defendant Nancy J. Wysenski, Chief Commercial Officer, stressed the size of the market that could be affected by the combination therapy – a market involving potentially billions of dollars of sales.

Not surprisingly, Vertex's stock price rose on this news. At the same time, over the following days, Defendants dumped tens of millions of dollars' worth of their own Vertex stock.

On May 29, 2012, Defendants issued another press release that amended and provided "additional data" about the interim results previously described on May 7, 2012. The May 29th release corrected the numbers previously reported as "absolute" when they were actually "relative." Therefore, the 46% of patients experiencing an "absolute" improvement of 5 percentage points or more dropped to 35% while the 30% of patients who experienced an improvement of 10 percentage points or more from baseline to Day 56 became 19%. In correcting the May 7, 2012 errors in the press release, Vertex blamed a third party. However, confidential witnesses explain that the data calculation mistake was entirely internal and that Defendants would have or should have known that the numbers were simply "too good to be true." The three week lag, however, permitted Defendants the time to sell almost $32 million in stock while the price of Vertex, inflated by Defendants' misrepresentations, soared. Indeed, the sales are so suspicious on their face that they led a United States senator to write to the SEC chairperson complaining about the sales and the opportunistic nature of them.

## **PROCEDURAL BACKGROUND**

Bristol filed its Amended Consolidated Complaint (the "Complaint") on February 11, 2013. All Defendants, on April 12, 2013, moved to dismiss that complaint. Following a hearing,

the Court granted Defendants' motion to dismiss on March 31, 2014 (the "Order"). In the Order, the Court noted at the outset that:

> It is essentially undisputed that ***Vertex made a false statement on May 7, 2012***, when it released the interim results of a Phase II clinical study concerning a combination therapy for cystic fibrosis. The basic problem with the complaint, however, is that Vertex corrected that statement on May 29, ***and plaintiff*** **[Bristol]** ***did not purchase any shares until May 30***. Plaintiff [Bristol] is thus without standing to assert claims arising out of the May 9 statement, and cannot establish that the misrepresentation caused it any loss.

Order at 1-2 (emphasis added). Since the issuance of the Order, Local No. 8, an absent class member, has come forward to pursue this case as a named Plaintiff. Local No. 8 purchased Vertex stock between May 7, 2012 and May 29, 2012 (*see*, Local No. 8 Certification, attached to the proposed SAC), and therefore does *not* suffer from the lack of standing problem that the Court identified with respect to Plaintiff Bristol.

Because the presence of the proposed Plaintiff-Intervener Local No. 8 will cure the standing issues identified by the Court's Order (and because certain other alleged defects identified in the Order are also addressed in the proposed SAC), Movants ask this Court to clarify and/or amend the Order and permit them to file the proposed SAC.

## ARGUMENT

### I. THE COURT SHOULD CLARIFY ITS ORDER TO MAKE CLEAR THAT THE COURT DID NOT INTEND TO DISMISS THIS ACTION WITH PREJUDICE, AND/OR SHOULD AMEND THE ORDER TO PERMIT THE FILING OF THE PROPOSED SAC.

Under Rule 59(e), a party may file a motion to alter or amend a judgment within twenty eight days of an entry of judgment. As case law has established, this court has "substantial and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008).

First of all, it is questionable whether Movants are required to file a Rule 59(e) motion at all, given that the Order is unclear as to whether the case is dismissed ***without*** prejudice, and because no separate judgment has been entered by the clerk's office. Moreover, in Plaintiff Bristol's opposition papers on the motion to dismiss, Plaintiff Bristol, on behalf of the Class, specifically requested leave to amend under Rule 15(a) in the event that the Court were to find the Complaint to be defective in any respect. See, ECF No. 48 at 24 n.9. Plaintiff Bristol and proposed Plaintiff-Intervener Local No. 8 respectfully submit that there is nothing on the face of the Order that suggests that the Court considered (let alone ruled upon) the request for leave to amend. Therefore, Plaintiff Bristol and Plaintiff-Intervener Local No. 8 move under Rule 59(e) for clarification of the Order, and its amendment under Rule 59 to the extent permission under Rule 59 is required, to permit the filing of the proposed SAC. *See Barry v. Bowen*, 825 F.2d 1324, 1328 (9th Cir.1987) (motions for clarification are properly considered under the rubric of Rule 59(e)).

To the extent the Court holds that its Order was intended to and did dismiss the action with prejudice and that final judgment should be deemed to have been entered, Movants request this Court, pursuant to Rule 59(e), to reopen and amend the judgment to permit the filing of the proposed SAC. Rule 59(e) motions should be granted whenever the moving party establishes a manifest error of law, newly discovered evidence, an intervening change in controlling law, or manifest injustice. *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). In this case, the Court should grant the motion to amend its Order pursuant to Rule 59(e) because the Proposed Complaint incorporates a previously-unnamed Plaintiff that only came forth as a result of the issuance of the Order. Indeed, until the Order was issued, Plaintiff-Intervener Local No. 8 could not have known that the Court would find that Bristol lacked standing to protect the

interests of Local No. 8 (and other Class members who purchased between May 7 and May 29, 2012) and that it would have to intervene to protect those interests. Indeed, this Court rejected the very same standing arguments made by Defendants in its December 21, 2012 Order on Motion for Appointment of Lead Plaintiff (ECF No. 37). Accordingly, it was only when the Order was issued that Plaintiff Bristol and Plaintiff-Intervener Local No. 8 became aware of the need to add Plaintiff-Intervener in order to allow a meritorious claim as to a proven misstatement getting to proceed on the merits.

## II. BECAUSE THE PROPOSED SAC CURES ANY DEFICIENCIES WITH RESPECT TO THE CLAIMS OF THOSE WHO PURCHASED BETWEEN MAY 7 AND MAY 29, 2012, LEAVE TO AMEND SHOULD BE GRANTED.

Plaintiff Bristol and Plaintiff-Intervener Local No. 8 also respectfully move under Rule 15(a) for leave to file the proposed SAC to add allegations relating to Plaintiff-Intervener's purchases of Vertex stock between May 7, 2012 and May 29, 2012, and to add further factual details that adequately allege both the falsity of Defendants' statements and a strong inference of Defendants' scienter.

The policy underlying Rule 15(a) is to grant leave to amend freely when justice so requires. Indeed, in this case, the factors that courts typically consider when ruling on a motion to amend weigh heavily in favor of allowing the amendment.

### A. <u>There Is No Substantial Reason To Deny Leave To Amend.</u>

This Court should allow Movants an opportunity to amend the Complaint because there is no "substantial reason" to deny them leave to amend. *See ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 55-56 (1st Cir. 2008). Indeed, each of the factors that courts typically examine when determining whether to grant leave to amend weighs heavily in favor of allowing the amendment:

- **No Undue Delay:** There has been no undue delay in this case because Plaintiff-Intervener Local No. 8 was only made aware of the need to intervene and file the proposed SAC following issuance of the Court's March 31 Order;

- **No Bad Faith:** The proposed SAC is not proffered in bad faith, but is instead plainly asserted in good faith to (a) address the curable standing defect that the Court found in its Order, and to (b) cure certain other defects identified by the Court in the current Complaint that can also be readily cured so that the pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA") can be met, and the interests of the absent class members in an adjudication on the merits can be preserved;

- **No Undue Prejudice:** Defendants cannot claim any undue prejudice because they have been on notice of the allegations that are asserted in the proposed SAC throughout the pendency of this case. Indeed, Movants primarily seek to remove a number of alleged misstatements from the Complaint, and to more narrowly focus the pleadings on the claims that this Court has already identified as being potentially meritorious; and

- **Not Futile:** The amendment is not futile because, at noted above, it cures the deficiencies that the Court found to be fatal in its March 31, 2014 Order. As discussed more fully below, Plaintiff-Intervener has standing to adequately allege the falsity of the May 7, 2012 misstatements.

**B. Leave To Amend Is Not "Futile".**

An amended complaint is not futile when the proposed amendments cure the defects the District Court has identified. In this case, there can be no question that the proposed SAC cures the defects noted in the Court's Order and thus is not futile. Furthermore, "[a]n amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." *Menard v. CSX Transp., Inc.*, 540 F. Supp. 2d 421, 427 (D. Mass. 2012).[1]

On the very first page of the Order, the Court found succinctly that ***"[i]t is essentially undisputed that Vertex made a false statement on May 7, 2012.***" Order at 1-2. The Order likewise states that the corrective disclosure for the May 7, 2012 false statement occurred on May 29, 2012. Order at 2. Therefore, because Plaintiff Bristol purchased its Vertex stock on

[1] Unless otherwise indicated, all internal citations are omitted and emphasis is added.

May 30, 2012, the Court found that, even though Defendants made a misstatement on May 7, 2012, Bristol could not establish that the misrepresentation caused it any loss and was "without standing to assert claims arising out of the May 7 statement." *Id.*[2] This deficiency is clearly rectified in the proposed SAC which inserts Plaintiff-Intervener Local No. 8, who purchased its shares of Vertex stock ***after*** May 7, 2012 and ***before*** May 29, 2012, and thus has standing to assert claims arising out of Defendants' May 7, 2012 false statements.

Furthermore, after finding that the May 7, 2012 statements were false, the Court noted that the Complaint's insider trading allegations were deficient. Specifically, the Court noted that "no such comparisons [between Defendants' insider trading during vs. their insider trading before or after the class period] have been made here, even though the information concerning those sales is public knowledge." Order at 20. The proposed SAC now contains a discussion and a detailed chart concerning the insider trading patterns and history of Defendants.

In sum, the proposed SAC squarely addresses the deficiencies that the Court (as set forth in the Order) found in the current Complaint, and rectifies them in accord with the Court's roadmap for fixing those deficiencies.

### C. Policy Concerns, Including the Protection of the Interests of Thousands of Absent Class Members, Weigh Strongly in Favor of Granting Leave to Amend.

Particularly in cases involving heightened pleading standards, this Court routinely provides opportunities to amend. *See United States ex rel. Poteet v. Bahler Medical, Inc.*, 619 F.3d 104, 115 (1st Cir. 2010) (Rule 9(b) particularity requirements); *New England Data Serv., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987) (RICO); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (Rule 9(b)). The PSLRA does not alter this general principle. *ACA*

[2] The Court later noted that the May 7, 2012 statement was "***false***," "***misleading***," and "***material***." Order at 18.

*Financial*, 512 F.3d at 56. To the contrary, the "liberal amendment policy of Rule 15(a) should be adhered to precisely because the PSLRA requires 'an unprecedented degree of specificity and detail.'" *Id.* (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Accordingly, for PSLRA cases, "'dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Belizan v. Herson*, 434 F.3d 579, 583-84 (D.C. Cir. 2006) (cited with approval in *ACA Financial*, 512 F.3d at 56); see also *Eminence Capital*, 316 F.3d at 1052 (dismissal without leave to amend "is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment").

As numerous courts have recognized, the PSLRA requires plaintiffs to plead fraud with a high degree of particularity, and it is extremely difficult for securities plaintiffs (let alone absent class members such as Plaintiff-Intervener Local No. 8) to predict whether an amendment to the operative complaint will be necessary, and even harder to gauge in advance how to cure whatever deficiency the court might find. *See Belizan*, 434 F.3d at 583-84; *see also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (where original complaint should have been dismissed without prejudice, denial of 59(e) motion was abuse of discretion).

This case is no different, and thus Movants should be afforded leave to amend to file the proposed SAC. Indeed, leave to amend (and intervention in connection with the proposed SAC) is especially appropriate here, given that absent the filing of an amended complaint that includes a plaintiff (such as Local No. 8) that does not suffer from standing concerns, the interests of potentially thousands of class members will be adversely affected.

## III. THE COURT SHOULD GRANT THE MOTION TO INTERVENE

Lastly, Movants seek to have Local No. 8 intervene in this action as a named Plaintiff. Fed. R. Civ. P. 24 authorizes absent class members and non-parties to join an action through two means: intervention as of right or permissive intervention. Rule 24 provides:

> (a) **Intervention of Right**. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) **Permissive Intervention**. [] On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24. Local No. 8 meets both conditions and thus should be able to join this action as of right ***and*** by permission.

As a preliminary matter, there can be no question that this motion to intervene is timely. In evaluating timeliness under Rule 24(a), the Court should consider: (a) the length of time the proposed intervener knew or should have known of his interest in the litigation prior to submitting his application to the Court; (b) whether the proposed intervention prejudices the parties if the intervener fails to intervene without delay; and (c) the existence of unusual circumstances militating for or against the intervention. *See Caterino v. Barry, Teamsters Local Union No. 122*, 922 F.2d. 37, 40 (1st Cir. 1990); *Culbreath v. Dukakis,* 630 F.2d 15, 17 (1st Cir. 1980).

As set forth herein, promptly after the Court found there to be actionable misstatements but a lack of standing by Plaintiff Bristol, proposed Plaintiff-Intervener Local No. 8 came

forward to intervene. Local No. 8, like other absent members of the Class, had relied on Bristol to protect its continued interest in this action. However, once the Court determined that Bristol lacked standing, it became apparent that there was no longer anybody remaining to protect the rights of the Class. By seeking to intervene within a month of the Court's Order, Local No. 8's application is plainly timely.

Defendants will also suffer no prejudice or adverse change in their position if Local No. 8 is permitted to intervene. In contrast, the Class will suffer extreme prejudice if the Court does not allow the intervention, since the Class will have no one to assert its rights against the Defendants.

Finally, there are no unusual factors relevant to the timeliness of Local No. 8's motion to intervene. Accordingly, all relevant factors weigh in favor of finding that Local No. 8's motion to intervene is timely.[3]

Furthermore, as set forth in the Certification of Local No. 8. attached to the proposed SAC, Local No. 8 purchased Vertex securities during the Class Period and was injured thereby. It suffered financial losses from the Defendants' material misrepresentations regarding Vertex's products and business. It thus "claims an interest relating to the property or transaction which is the subject of the action", and its claim and "the main action [have] a common question of law or fact." Fed. R. Civ. P. 24. Therefore, Local No. 8 meets the requirements of both intervention as of right and permissive intervention.

---

[3] Indeed, given the Court's finding in its Lead Plaintiff Order dated December 21, 2012 that Plaintiff Bristol had made a sufficient "preliminary showing" of its adequacy to serve as Lead Plaintiff (ECF No. 37 at 7), it would have been inappropriate for Local No. 8 (or any other absent class member) to intervene in this action earlier, as the Court had made clear that it was not interested in entertaining any more challenges to Bristol's standing until "a later stage in the suit." In other words, it would have been an affront to the Court's December 21, 2012 Order for Local No. 8 for Local No. 8 to step forward and, in effect, raise issues regarding Bristol's adequacy, until a "later stage in the suit," such as now. *Id.*

Finally, absent intervention by Local No. 8, the prejudice suffered by the Class will be absolute compared to whatever prejudice Defendants may claim they bear if intervention is permitted. In the context of class actions, courts "appear to be particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervener's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation." *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 99-MD-1309, 2002 WL 31371945, at *2 (D. Minn. Oct. 7, 2002) (quoting 3 Herbert Newberg & Alba Conta, *Newberg on Class Actions* §§16.08-.09 (3d ed. 1992).

In sum, prudence and policy concerns both dictate that neither Local No. 8's interest nor those of the proposed Class should be at risk of going unrepresented in this case. Local No. 8 thus meets the "minimal burden" of demonstrating that the existing representation in this class action may be inadequate. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n.10 (1972). *See also Herman v. New York Metro Area Postal Union,* No. 97 Civ. 6839, 1998 WL 214787, at *2 (S.D.N.Y. Apr. 30, 1998) (intervention permitted where interveners showed "potential" that their representation "may be" inadequate, even though defendants argued that interveners failed to present a "valid complaint" regarding their representation). *See also McCausland v. Shareholders Management Co.*, 52 F.R.D. 521, 524 (S.D.N.Y. 1971) (alleged class members sought permissive intervention to supply action with adequate class representation in the event the personal defenses alleged against the original representative should prevail); *First Am. Corp. v. Foster*, 51 F.R.D. 248, 251 (N.D. Ga. 1970) (After upholding class certification, two class members were permitted to intervene as matter of right in order to "broaden the representation of plaintiff."). Without Local No. 8's intervention, the Class may be subject to irrevocable harm.

**CONCLUSION**

For the foregoing reasons, Movants respectfully request that this Court grant the Motion to Clarify and Amend Judgment, to Permit Leave to File a Second Amended Complaint, and to Grant Leave to Local No. 8 to Intervene to allow it to file the Proposed Second Amended Complaint.

Dated: April 28, 2014

Respectfully submitted,
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

/s/ *Amanda F. Lawrence*

AMANDA F. LAWRENCE (*pro hac vice*)
DAVID R. SCOTT (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
alawrence@scott-scott.com
david.scott@scott-scott.com

BETH A. KASWAN (*pro hac vice*)
JOSEPH P. GUGLIELMO (JG671410)
DONALD A. BROGGI (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
bkaswan@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com

*Lead Counsel for Plaintiff and Plaintiff-Intervener*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 28, 2014.

/s/ *Amanda F. Lawrence*
AMANDA F. LAWRENCE (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
alawrence@scott-scott.com

*Lead Counsel for Plaintiff and Plaintiff-Intervener*