UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF BRISTOL PENSION FUND, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERTEX PHARMACEUTICALS INC., JOSHUA BOGER, Ph.D., JEFFREY LEIDEN, M.D., Ph.D., PETER MUELLER, Ph.D., PAUL SILVA, ELAINE ULLIAN, AND NANCY J. WYSENSKI,<br><br>Defendants. | No. 1:12-cv-11654-FDS<br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF AND PLAINTIFF-INTERVENER'S JOINT MOTION TO CLARIFY AND AMEND JUDGMENT, TO PERMIT FILING OF A SECOND AMENDED COMPLAINT, AND TO ALLOW LOCAL NO. 8 IBEW RETIREMENT PLAN & TRUST TO INTERVENE**

John F. Sylvia, BBO #555581
Matthew D. Levitt, BBO #660554
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel.: (617) 542-6000
Fax: (617) 542-2241

*Attorneys for Defendants Vertex Pharmaceuticals Incorporated, Joshua Boger, Ph.D., Jeffrey Leiden, M.D., Ph.D., Peter Mueller, Ph.D., Paul Silva, Elaine Ullian, and Nancy J. Wysenski*

Dated: May 12, 2014

# TABLE OF CONTENTS


Table of Authorities ........ ii

Request for Oral Argument ........ v

Introduction ........ 1

Argument ........ 2

I. Bristol Fails To Satisfy Rule 59(e)'s Requirements, Which Must Be Met Before The Relief Bristol Requests Is Available ........ 2

A. Because The Amended Complaint Was Dismissed With Prejudice, The Relief Requested Is Unavailable Unless Rule 59(e) Applies ........ 2

B. Bristol Does Not Satisfy The Conditions For Rule 59(e) Relief ........ 3

II. Bristol's Request For Leave To Amend Is Untimely, And The Proposed SAC Is Futile ........ 7

A. Bristol's Request Is Untimely And Should Be Rejected ........ 7

B. Bristol's Proposed SAC Is Futile, Requiring Denial Of Leave To Amend ........ 9

III. Local No. 8's Motion To Intervene Is Untimely, And Is In Any Event Futile ........ 10

A. Local No. 8's Request Is Untimely And Should Be Rejected ........ 10

B. Local No. 8's Proposed SAC Is Futile, Requiring Denial of Leave To Amend ........ 13

IV. Sanctions Are Appropriate, And Defendants Should Be Awarded The Attorneys' Fees Incurred In Connection With Opposing This Frivolous Motion ........ 15

Conclusion ........ 16

Certificate of Service ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraham v. Woods Hole Oceanographic Inst.*,
553 F.3d 114 (1st Cir. 2009)....................9

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) ....................7, 9

*Educadores Puertorriqueños en Acción v. Hernandez*,
367 F.3d 61 (1st Cir. 2004) ....................7

*Acevedo-Villalobos v. Hernandez*,
22 F.3d 384 (1st Cir. 1994) ....................3

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) ....................2

*Banco Popular de Puerto Rico v. Greenblatt*,
964 F.2d 1227 (1st Cir. 1992) ....................10

*Caterino v. Barry*,
922 F.2d 37 (1st Cir. 1990) ....................10, 11, 12

*Citibank Global Mkts., Inc. v. Santana*,
573 F.3d 17 (1st Cir. 2009) ....................15, 16

*City of Bristol Pension Fund v. Vertex Pharm.*,
2012 U.S. Dist. LEXIS 180974 (D. Mass. 2012) ....................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
632 F.3d 751 (1st Cir. 2011)....................14

*Culbreath v. Dukakis*,
630 F.2d 15 (1st Cir. 1980) ....................12

*Dartmouth Review v. Dartmouth Coll.*,
889 F.2d 13 (1st Cir. 1989) ....................7

*Fisher v. Kadant, Inc.*,
589 F.3d 505 (1st Cir. 2009) ....................3, 7

*In re Green Mountain Coffee Roasters, Inc. Sec. Litig.*,
No. 2:11-cv-00289-WKS (D. Vt. filed Nov. 29, 2011)....................12

*In re: Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005) ....................7, 10

*James v. Watt*,
716 F.2d 71 (1st Cir. 1983) ....................7, 8

*Judge v. City of Lowell*,
160 F.3d 67 (1st Cir. 1998) ....................10

*Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*,
616 F.3d 612 (6th Cir. 2012) ....................8

*Maldonado v. Dominguez*,
137 F.3d 1 (1st Cir. 1998) ....................3

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005) ....................4, 5

*Markel Am. Ins. Co. v. Díaz-Santiago*,
674 F.3d 21 (1st Cir. 2012) ....................4

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ....................15

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ....................8

*R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir. 2009) ....................10, 11

*Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.*,
649 F.3d 5 (1st Cir. 2011) ....................14

*Silverstrand Invs. v. AMAG Pharm, Inc.*,
707 F.3d 95 (1st Cir. 2013) ....................9

*Simon v. Abiomed, Inc.*,
No. 12-12137-FDS, 2014 U.S Dist. LEXIS 49727 (D. Mass. Apr. 10, 2014) ....................13

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990) ....................8

*United States ex rel. Gagne v. City of Worcester*,
564 F. Supp. 2d 81 (D. Mass. 2008) ....................4

*United States ex rel. Ge v. Takeda Pharm. Co.*,
737 F.3d 116 (1st Cir. 2013) ....................9

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004) ....................2, 3

*United States v. Taylor*,
54 F.3d 967 (1st Cir. 1995) ....................13

*Velazques-Rivera v. Sea-Land Serv., Inc.*,
920 F.2d 1072 (1st Cir. 1990) ....................2

**STATUTES**

15 U.S.C. § 78u-4(c) (2012) ....................15

15 U.S.C. § 78u-4(a)(3)(A)(i) (2012) ....................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b) ....................15

Fed. R. Civ. P. 12(b)(6) ....................2

Fed. R. Civ. P. 15(a) ....................7

Fed. R. Civ. P. 24....................10

Fed. R. Civ. P. 41(b) ....................3

Fed. R. Civ. P. 59(e) .................... passim

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(D), and in order to assist this Court in evaluating the parties' positions, Defendants respectfully request oral argument on the pending motion.

[*Remainder of page left blank intentionally*]

## INTRODUCTION

Defendants Vertex Pharmaceuticals Incorporated ("Vertex" or the "Company"), Joshua Boger, Ph.D., Jeffrey Leiden, M.D., Ph.D., Peter Mueller, Ph.D., Paul Silva, Elaine Ullian, and Nancy J. Wysenski (collectively, "Defendants") submit this brief in opposition to Plaintiff and Plaintiff-Intervener's motion improperly seeking to resurrect Plaintiff's failed suit. As demonstrated below, the motion fails for three independent reasons, any one of which suffices to deny the motion. Specifically, the motion does not meet the high standard necessary to warrant reconsideration, it is also untimely and, in any event, would be futile.

On March 31, 2014, this Court granted Defendants' motion to dismiss the Amended Complaint in its entirety for failure to state a claim. (ECF No. 61). Accordingly, the Clerk of Court that same day entered a separate order of dismissal and terminated the case. (ECF No. 62). Notwithstanding the Court's well-reasoned conclusions that the Plaintiff, City of Bristol Pension Fund ("Bristol"), lacked standing and had failed to show that the alleged misstatements were materially misleading or made with the scienter required under the PSLRA, Bristol seeks to set aside the judgment in order to permit yet a third attempt to submit a worthy complaint. In addition, Plaintiff now seeks leave to have Plaintiff-Intervener Local No. 8 IBEW Retirement Plan & Trust ("Local No. 8") intervene in the defunct action. Because these requests do not constitute a legitimate use of a motion for reconsideration, they must be rejected.

First, Bristol has failed to show the good cause required under Rule 59(e) to justify the alteration or amendment of the judgment. Second, Bristol's untimely motion to again amend its complaint must be rejected because the case has been dismissed with prejudice, thereby precluding this plaintiff from further litigating this action. Third, even absent the bar of a dismissal with prejudice, Bristol's request for leave to amend would fail because of the futility of

the proposed amendment. Finally, Local No. 8 must not be permitted to intervene here, where not only will it (and, of course, its counsel) be charged with having known of the pending action since September 2012, but of having known since at least November 2012 of the precise deficiency for which Bristol's case was rejected. After idly sitting on the sidelines for over nineteen months, Local No. 8's request is untimely and inappropriate. For all of these reasons, as set forth below in greater detail, Bristol and Local No. 8's motion should be denied.

## ARGUMENT

### I. Bristol Fails To Satisfy Rule 59(e)'s Requirements, Which Must Be Met Before The Relief Bristol Requests Is Available

#### *A. Because The Amended Complaint Was Dismissed With Prejudice, The Relief Requested Is Unavailable Unless Rule 59(e) Applies*

At the outset, Bristol professes some degree of uncertainty as to whether the Amended Complaint was dismissed with prejudice. (Pl. Mot. 6). This uncertainty is unfounded. As the case law makes clear, the dismissal operates as a dismissal with prejudice because the Court provided no indication to the contrary. On March 31, 2014, the Court issued its Memorandum and Order granting Defendants' Rule 12(b)(6) motion to dismiss in its entirety. (ECF No. 61). The Clerk then entered an Order of Dismissal that terminated the case. (ECF No. 62). Neither the Memorandum and Order nor the Order of Dismissal stated or in any way suggested that the case was being dismissed without prejudice, or that Bristol was granted leave to amend.

Absent any indication to the contrary, a dismissal will be assumed to have been with prejudice. "[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004); *Velazques-Rivera v. Sea-Land Serv., Inc.*, 920 F.2d 1072, 1076 n.5 (1st Cir. 1990) ("[I]n the absence of any notation to the contrary, we presume that a dismissal is with prejudice."); *Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp.

2d 93, 99 (D. Mass. 2001) ("A dismissal for failure to state a claim is a judgment on the merits …. This type of dismissal, presumed to be with prejudice unless the order explicitly states otherwise, has a claim preclusive effect."); Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); *see also Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 389 (1st Cir. 1994) ("[W]hen a district court uses the words, 'The complaint is dismissed,' without expressly granting the plaintiff leave to amend, this is a 'final decision' from which a timely appeal may be taken."). Because there is no legitimate issue regarding the nature of the dismissal, Rule 59 is Bristol's sole remedy for relief from the judgment.[1/]

### *B. Bristol Does Not Satisfy The Conditions For Rule 59(e) Relief*

Because the Amended Complaint was dismissed with prejudice, Bristol cannot salvage its case via its proposed Second Amended Complaint (the "SAC") unless it first satisfies Rule 59(e)'s requirements. *See Fisher v. Kadant, Inc.*, 589 F.3d 505, 509 (1st Cir. 2009) ("[O]nce judgment has entered, the case is a dead letter, and the district court is without power to allow an amendment to the complaint because there is no complaint left to amend."). It is procedural bedrock that "[a] dismissal with prejudice is a final judgment that 'slams the door shut on the possibility of future amendments to the complaint' unless the judgment is set aside or vacated pursuant to Rule 59 or Rule 60." *Karvelas*, 360 F.3d at 242 n.30; *see also Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998) (observing the "bedrock principle of civil procedure" holding that "a district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set aside or vacated pursuant to Fed. R. Civ. P. 59 or 60.").

---

[1/] Bristol's citation to cases holding that dismissals with prejudice may not be warranted in all PSLRA cases is inapposite. (Pl. Mot. 10). These cases go to the *propriety* of a district court's dismissal with prejudice, not the question of *whether* a dismissal is with prejudice.

And Rule 59(e) presents a formidable obstacle, as the First Circuit has recognized in the very case Bristol cites, noting that "it is very difficult to prevail on a Rule 59(e) motion." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). This Court, too, has echoed this statement, opining that Rule 59(e) motions "are extraordinary remedies which should be used sparingly … and are typically denied." *United States ex rel. Gagne v. City of Worcester*, 564 F. Supp. 2d 81, 83 (D. Mass. 2008) (Saylor, J.) (internal quotations and citations omitted), *aff'd* 565 F.3d 40 (1st Cir. 2009). Because Bristol does not satisfy Rule 59(e)'s requirements, for the reasons given below, its request for leave to amend the complaint must be denied.

To prevail on a Rule 59(e) motion, a plaintiff "'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Markel Am. Ins. Co. v. Díaz-Santiago*, 674 F.3d 21, 32 (1st Cir. 2012) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Neither circumstance is present here. Indeed, Bristol makes no attempt to argue that any manifest error of law occurred or that newly discovered evidence has surfaced. Bristol does not challenge any of the Court's findings regarding its lack of standing, either as a matter of fact, or of law. Indeed, the sole ground Bristol advances in support of its Rule 59(e) motion is that "the Proposed Complaint incorporates a previously-unnamed Plaintiff that only came forth as a result of the issuance of the Order." (Pl. Mot. 6). This "fact" plainly does not translate to a manifest error of law, nor constitute newly discovered evidence, and, accordingly, the Rule 59(e) motion must be denied.

Bristol cites to *Marie* for the proposition that Rule 59(e) motions can also be granted to address: "an intervening change in controlling law" or "manifest injustice." (Pl. Mot. 6). *Marie* does not support such a broad reading: "The general rule in this circuit is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered

evidence.'" 402 F.3d at 7 n.2 (quoting *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 146 n.2 (1st Cir. 2004)). The additional grounds Bristol attributes to the holding in *Marie* are derived from Wright et al.'s *Federal Practice & Procedure*, which is only discussed in dicta in a "see also" footnote, but not adopted as Circuit precedent. *Marie*, 402 F.3d at 7 n.2.

Even assuming, *arguendo*, that these additional grounds were controlling, Bristol still fails to demonstrate its entitlement to Rule 59(e) relief. First, there has been no intervening change in the controlling law, a point Bristol concedes by failing to identify any such change. Likewise, no manifest injustice has occurred (nor will occur by denying this motion). The untimely, post-dismissal emergence of a previously-unnamed plaintiff cannot be considered a circumstance giving rise to manifest injustice. Moreover, nowhere in the half-paragraph Bristol devotes to arguing that it satisfies Rule 59(e) does it argue that the late emergence of Local No. 8 qualifies as the type of manifest injustice that would justify amending the judgment. (Pl. Mot. 6–7).

To the contrary, Local No. 8 and its counsel were on notice of the pendency of this suit since at least September 6, 2012, the date on which Bristol published via *Globe Newswire* a nationwide notice of pendency of class action to potential class members as required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i) (2012). (ECF Nos. 30 and 30–1). *See City of Bristol Pension Fund v. Vertex Pharm.*, 2012 U.S. Dist. LEXIS 180974, at *8 (D. Mass. 2012) (ECF No. 37 at 6). Neither Bristol nor Local No. 8 suggests either that this notice was insufficient to place Local No. 8 on notice, or that Local No. 8 was unaware of this suit's pendency. So at least as of September 6, 2012, Local No. 8 could have and should have stepped forward if it believed its rights were in any way imperiled by Bristol's suit and its efforts to be appointed as lead plaintiff.

In addition, on November 19, 2012, Defendants flagged the very issue Bristol now claims Local No. 8 could not have spotted before the dismissal—Bristol's lack of standing. In opposing Bristol's lead plaintiff motion, Defendants argued that Bristol had no standing because it purchased its stock only after the corrective statement had been issued. (ECF No. 32 at 4–6). With only minimal inquiry, Local No. 8 would have learned of the potential standing issue by November 2012 at the latest—fully sixteen months before this Court's order dismissing the Amended Complaint. It is therefore disingenuous for Local No. 8 to suggest it could not have known until the dismissal order entered that Bristol's adequacy as a class representative was in doubt. (Pl. Mot. 7). More disingenuous still is the argument that "this Court rejected the very same standing argument made by Defendants in its December 21, 2012 Order." (Pl. Mot. 7). In that Order, the Court expressly did not reject this argument, instead taking no position on the issue at the time: "The Court takes no position as to whether this argument, or any of defendants' other challenges to plaintiff's standing, may prove meritorious at a later stage in the suit." (ECF No. 37 at 7 n.2).[2/] This language is unambiguous.

Despite notice that this suit was pending, Local No. 8 and its counsel chose to stand idle even *after* the notice of pendency was published on September 6, 2012; *after* Defendants highlighted Bristol's lack of standing on November 19, 2012; and *after* the parties briefed the standing issue in the motion to dismiss. Only now, post-dismissal, has Local No. 8 finally stepped forward. Any prejudice arising from Local No. 8's inaction is therefore entirely of its own making and insufficient to justify Rule 59(e) relief. "[P]arties having knowledge of the

---

[2/] This is not Bristol's first mischaracterization of the December 21 Order. In its brief opposing the motion to dismiss, Bristol argued that Defendants' standing argument was a "rehash" of an argument "this Court already rejected." (ECF No. 48 at 10). Of course, the Court did not then (or ever) "reject" that argument, and Defendants corrected Bristol's misrepresentation in their reply brief. (ECF No. 51 at 3). In the dismissal order, the Court subsequently removed whatever doubt remained, reiterating that it "did not definitively rule on the issue" in the December 21 Order. (ECF No. 61 at 10 n.10). In view of these events, Bristol's ongoing insistence that the December 21 Order rejected the standing argument is frivolous.

pendency of litigation which may affect their interest[s] sit idle at their peril." *In re: Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 345 (D. Mass. 2005) (quoting *Caterino v. Barry*, 922 F.2d 37, 41 (1st Cir. 1990)) (internal quotations omitted). As discussed further in Section III, Local No. 8's untimeliness precludes its late intervention.

## II. Bristol's Request For Leave To Amend Is Untimely, And The Proposed SAC Is Futile

### *A. Bristol's Request Is Untimely And Should Be Rejected*

As noted above, Bristol had been aware of Defendants' challenge to its judicial standing since, at the latest, the motion for appointment as lead plaintiff. Defendants again highlighted Bristol's lack of standing in their opening brief in support of the motion to dismiss. (ECF No. 46 at 5–7). At that point, Bristol did not to seek leave to amend, instead choosing to stand on its Amended Complaint and oppose the motion to dismiss. Having enjoyed ample opportunities to cure the defects in the Amended Complaint, Bristol's untimely post-judgment efforts are too little, too late, and must be rejected.

Because Bristol only now, post-judgment, finally seeks leave to amend, the applicable standard is stricter than the usual pre-judgment Rule 15 standard. To be sure, when leave to amend is sought *before* judgment enters, leave is freely given. *Fisher*, 589 F.3d at 508; Fed. R. Civ. P. 15(a); *see also Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 22 (1st Cir. 1989) (noting that "the thrust of Rule 15(a) is aimed at the pre-judgment phases of litigation"), overruled on other grounds by *Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61 (1st Cir. 2004). By contrast, and contrary to Bristol's suggestion, when a party waits until *after* judgment has entered to seek leave to amend, a more restrictive standard applies. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008). The First Circuit has explained, in *James v. Watt*, 716 F.2d 71 (1st Cir. 1983) (Breyer, J.), the well-founded rationale for applying a more

exacting standard. In affirming the district court's rejection of plaintiffs' post-judgment attempt to amend, the court explained that to permit such amendment would undermine the finality of judicial decision-making:

> To require the district court to permit amendment here would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision. Such a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances.

*Id.* at 78.

In light of Bristol's voluntary decision to delay seeking leave to amend, Rule 15(a)'s liberal amendment policy no longer applies and considerations of finality control. *See Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615–16 (6th Cir. 2012). "When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Were courts to liberally permit amendment following adverse judgments, "plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.'" *Leisure Caviar*, 616 F.3d at 616 (quoting *James*, 716 F.2d at 78). A plaintiff is not entitled to have the court provide an advisory roadmap identifying and suggesting cures for deficiencies in the complaint. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) ("Plaintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.") (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)).

Here, Bristol had ample opportunity to seek leave to amend but *chose* not to do so. Bristol never made a formal motion for leave to amend the Amended Complaint. While Bristol asserted a cursory footnote in its opposition to Defendants' motion to dismiss requesting leave to amend in the event the Court found the Amended Complaint lacking (ECF No. 48 at 24 n.9), the law is clear that boilerplate requests do not suffice. *See United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 128 (1st Cir. 2013) ("[A] bare request in an opposition to a motion to dismiss does not constitute a motion to amend for purposes of Rule 15(a)."); *Silverstrand Invs. v. AMAG Pharm, Inc.*, 707 F.3d 95, 107–08 (1st Cir. 2013) (district court may freely ignore "four boilerplate sentences stating the well-settled 'freely given' standard under which a request for leave to amend is generally analyzed."). Plaintiff's counsel never requested leave to amend at any point during the November 25, 2013 hearing on the motion to dismiss. (ECF No. 58). Finally, Bristol never moved for leave to amend following that motion hearing. Bristol's delay therefore mandates denial of its untimely request for post-judgment amendment. *See ACA Fin. Guar. Corp.*, 512 F.3d at 57 (affirming district court's rejection of plaintiffs' post-judgment motion for leave to amend after plaintiffs failed to move to amend after defendants identified the complaint's deficiencies, failed to request leave to amend during oral argument, and failed to move to amend after the hearing and before the court's decision).

### ***B. Bristol's Proposed SAC Is Futile, Requiring Denial Of Leave To Amend***

Setting aside the untimeliness of Bristol's request for leave to amend, which is itself sufficient justification to deny its request, the Court should also deny the request because the proposed amendment would be futile. *See Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009) (noting that leave to amend should be denied when it would be futile). "Where an amendment would be futile or would serve no legitimate purpose, the district

court 'should not needlessly prolong matters.'" *Judge v. City of Lowell*, 160 F.3d 67, 79 (1st Cir. 1998).

The proposed SAC is futile because it could not withstand a motion to dismiss, notwithstanding Plaintiff's protestations to the contrary. At least as to Bristol, the SAC fails to remedy the lack of standing arising from its purchase of Vertex stock only after the corrective statement was issued. Indeed, Bristol's standing defect is incurable and nothing in the SAC does or could provide a remedy. While Local No. 8 apparently does not suffer the same standing deficiency, its untimely motion to intervene bars its intervention and, as discussed in Section III, the SAC would be futile even if Local No. 8's motion had been timely brought.

## III. Local No. 8's Motion To Intervene Is Untimely, And Is In Any Event Futile

### *A. Local No. 8's Request Is Untimely And Should Be Rejected*

Local No. 8 has simply arrived too late to the party to be invited in, let alone to partake. Under both of Rule 24's provisions, whether for intervention as of right or for permissive intervention, the threshold precondition for intervention is a ***timely*** motion. *See Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) (noting that "timeliness stands as a sentinel at the gates whenever intervention is requested and opposed"); *In re: Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. at 345 ("In deciding whether to grant a motion to intervene, 'the timeliness requirement is of first importance.'") (quoting *Caterino*, 922 F.2d at 40). A district court is entitled to reject an application to intervene for untimeliness alone. *Caterino*, 922 F.2d at 40; *see also R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) ("[W]hen intervention is at issue, timeliness is the 'prevenient question.'").

In the First Circuit, the timeliness of a motion to intervene is assessed by considering four factors:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*Caterino*, 922 F.2d at 40 (quoting *United States v. Metro. Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir. 1989)). Here, consideration of all factors mandates rejection of Local No. 8's intervention motion.

First, regarding the length of time Local No. 8 knew or reasonably should have known of its interest before petitioning to intervene, as stated above, Local No. 8 was on notice of Bristol's standing defect since November 19, 2012 at the very latest.[3/] Local No. 8 neither has nor could plausibly advance any excuse for sitting on the sidelines for sixteen months before seeking to intervene. Indeed, Local No. 8 concedes that its inaction was deliberate: "Local No. 8, like other absent members of the Class, had relied on Bristol to protect its continued interest in this action." (Pl. Mot. 12). Local No. 8 therefore made a conscious strategic decision to rely on Bristol instead of seeking to involve itself in the pending litigation. As a result, Local No. 8 must now be held to account for the consequences of its decision to sit idle. *Caterino*, 922 F.2d at 40 (affirming district court's rejection of plaintiff's untimely intervention motion).

Local No. 8 urges the Court to consider its motion as timely based on the argument that before the dismissal, it "could not have known that the Court would find that Bristol lacked standing to protect" its interests. (Pl. Mot. 6–7). As noted above, this argument is chronologically untenable. More to the point, however, Local No. 8 gets the intervention standard exactly wrong. The question is not when Local No. 8 knew with certitude that Bristol's case was defective; it is

[3/] Moreover, Bristol's counsel cannot claim to have been unaware of the significant risk that Defendants explicitly identified regarding Bristol's lack of standing. Counsel's decision not to attempt a remedy in the face of this fatal defect raises obvious questions about the adequacy of their representation of the putative class.

instead when Local No. 8 perceived a measurable risk to its rights. *R&G Mortg. Corp.*, 584 F.3d at 8 ("Perfect knowledge of the particulars of the pending litigation is not essential to start the clock running; knowledge of a measurable risk to one's rights is enough."); *Caterino*, 922 F.2d at 40. Local No. 8 had notice of such a risk by September 6, 2012, the date the notice of pendency of action was published in *Globe Newswire*, and certainly by no later than November 2012, when Defendants raised the standing issue in opposition to Bristol's motion to be appointed lead counsel. Local No. 8 does not argue that it did not have notice of the pendency of this litigation, nor could it credibly do so given that it is a large, sophisticated institutional investor[4/] that has recently participated in another securities class action,[5/] thus further illustrating its savviness in this realm. *See Culbreath v. Dukakis*, 630 F.2d 15, 21 (1st Cir. 1980) (affirming the denial of a labor union's untimely intervention motion and discrediting the union's asserted unawareness of the suit, holding "[w]e see no excuse for the failure of large, sophisticated labor unions to learn of a suit and reported decisions so related to the promotion prospects of their members"). By sleeping on its rights, Local No. 8 has forfeited its ability to intervene now, after the case has been dismissed.

The other three factors likewise mandate a finding of untimeliness. The prejudice to Defendants is obvious: they have already incurred significant expenses in mounting a successful challenge to the sufficiency of the Amended Complaint. Had Local No. 8 come forth earlier,

---

[4/] Local No. 8 is "a professionally managed sophisticated institutional investor that manages over $280 million in assets on behalf of Plan Participants," according to its sworn declaration submitted in connection with other recent securities litigation. *See* Joint Declaration of the Midwest Retirement Funds in Support of Their Joint Motion for Appointment as Lead Plaintiff, *In re Green Mountain Coffee Roasters, Inc. Sec. Litig.*, No. 2:11-cv-00289-WKS (D. Vt. filed Nov. 29, 2011) (ECF No. 6-7 at ¶ 3, filed Jan. 30, 2012).

[5/] In Local No. 8's certification appended to the proposed SAC, it states that within the previous three years it sought to serve as a representative party or lead plaintiff in *In re Green Mountain Coffee Roasters, Inc. Sec. Litig.*, No. 2:11-cv-00289-WKS (D. Vt. filed Nov. 29, 2011). (ECF No. 63-1 at Schedule A). In that action, Local No. 8 was represented by the same firm that has been representing Bristol since the inception of this case. *See, e.g.*, Memorandum in Support of Motion of Midwest Retirement Funds For Appointment As Lead Plaintiff And Approval Of Lead Plaintiff's Selection of Lead Counsel, *In re Green Mountain Coffee Roasters, Inc. Sec. Litig.*, No. 2:11-cv-00289-WKS (D. Vt. filed Nov. 29, 2011) (ECF No. 6-1, filed Jan. 30, 2012). Thus, even if Local No. 8 had no idea that this suit had been filed, its counsel undeniably knew and could have so advised their client.

Defendants could have addressed the sufficiency of its claims in its briefing on the motion to dismiss. Should Local No. 8 now be allowed to intervene, Defendants will have to start anew, incurring unnecessarily duplicative costs in litigating a second motion to dismiss. Any prejudice to Local No. 8, by contrast, is minimal and entirely of its own making. Finally, there are no unusual circumstances militating in favor of intervention. Local No. 8's untimeliness is both the beginning and the end of the inquiry, and its belated application to intervene should be rejected. *See United States v. Taylor*, 54 F.3d 967, 972 (1st Cir. 1995) (explaining that "the law ministers to the vigilant, not to those who sleep upon perceptible rights," quoted in *R&G Mortg. Corp.*, 584 F.3d at 9).

***B. Local No. 8's Proposed SAC Is Futile, Requiring Denial Of Leave To Amend***

Even if Local No. 8 could surmount the untimeliness hurdle, the motion must still be denied because the proposed SAC fails to state a viable claim. While Local No. 8 purchased Vertex stock before the corrective statement issued and therefore apparently does not suffer from Bristol's standing defect, the proposed SAC nevertheless fails to remedy the deficiency the Court identified regarding the lack of a requisite strong inference of scienter.

In the Order dismissing the Amended Complaint, the court rejected as insufficient Bristol's attempt to show scienter through allegations of insider trading. As the Court noted, Bristol failed to allege details regarding trading volumes that would support a finding of unusualness. (ECF No. 61 at 20). In response to this deficiency, the proposed SAC has added only a single paragraph that provides a chart of the insiders' trading in 2012. (ECF No. 63–1 at ¶ 38). This is insufficient. Even assuming that this chart, whose data is not elaborated or discussed in the proposed SAC, sufficiently portrays the insiders' relevant trading histories, it nevertheless fails to provide adequate context for these trades. The proposed SAC does not, for example, describe how the number of shares the insiders sold compare with their overall

holdings. *See Simon v. Abiomed, Inc.*, No. 12-12137-FDS, 2014 U.S Dist. LEXIS 49727, at *63 (D. Mass. Apr. 10, 2014) (noting that plaintiffs can often carry the burden of establishing scienter through insider trading allegations by "showing that insiders sold large percentages of their holdings"). When relatively small portions of an insider's holdings are sold, as occurred here, the strength of any inference of scienter is considerably diminished. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 761 (1st Cir. 2011) (holding that an insider's sale of 4.82% of exercisable shares did not raise a strong inference of scienter). And with respect to Defendant Wysenski, while her trades were substantial, the Court already concluded that in the context of her retirement from Vertex in June 2012, her trades were not unusual. (ECF No. 61 at 20–21). The Court therefore held that "[i]f any inference of scienter can be drawn from Wysenski's stock sales, it is certainly far from strong." (*Id.* at 21). Nothing has changed.

Moreover, the proposed SAC's evidence of scienter still relies entirely on allegations of insider trading. This alone cannot demonstrate scienter. It is beyond dispute that "[i]nsider trading cannot establish scienter on its own, but rather can only do so in combination with other evidence." *Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.*, 649 F.3d 5, 29 (1st Cir. 2011). As there is no other evidence alleged, the proposed SAC is futile for lacking allegations that could even arguably give rise to a strong inference of scienter. Because insider trading alone is insufficient, and because the proposed SAC makes no other attempt to shore up the allegations advanced to support a finding of recklessness, the proposed SAC suffers from the same defects as the Amended Complaint, and accordingly is futile. Thus, even if Local No. 8 were permitted to intervene and file the proposed SAC, its claim still could not survive a motion to dismiss. In

the interests of efficiency, the Court therefore can and should reject the proposed amendment as an exercise in futility.

**IV. Sanctions Are Appropriate, And Defendants Should Be Awarded The Attorneys' Fees Incurred In Connection With Opposing This Frivolous Motion**

Because Bristol's motion fails for multiple independent reasons, this motion is frivolous. Both Bristol and Local No. 8 were well aware that Bristol lacked standing to bring this suit, but neither took any remedial action until now—when it is too late. The case is over. Neither Bristol nor Local No. 8 come close to satisfying the requirements for the extraordinary remedy of Rule 59(e), and yet they advance a motion that lacks any good faith basis for the remedies sought, forcing Defendants to continue to expend time and money defending against an unviable cause of action that this Court has already considered and rejected.[6/] The motion therefore violates Fed. R. Civ. P. 11(b). It is clear that this Rule 59(e) motion is not a legitimate request for reconsideration, but rather a last-ditch effort to absolve the Plaintiff of the consequences of its own delay. As such, it must fail.

The history of abusive securities litigation that gave rise to the PSLRA makes clear why the PSLRA explicitly mandates sanctions for abusive and frivolous litigation. *See* 15 U.S.C. § 78u-4(c) (2012); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Where a Rule 11(b) violation is found, for example arising from arguments made "with any improper purpose" or "frivolous" arguments, the PSLRA mandates imposition of sanctions. *Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 32 (1st Cir. 2009). Here, for example, Bristol's inclusion of itself as purported lead plaintiff in the proposed SAC, even though it admittedly lacks standing to assert a claim for the class period covering May 7 through May 29,

---

[6/] During the April 28, 2014 "meet and confer," counsel for Defendants advised counsel for Bristol that (a) the motion was frivolous; and (b) counsel intended to seek restitution of the expense incurred in opposing it. Plaintiff's counsel nevertheless elected to file this motion.

2012, is frivolous in that it has "absolutely no chance of success." *Id.* at 32 n.14 (quoting *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006)). Consequently, Defendants submit that the Court should award Defendants attorneys' fees incurred in connection with opposing this motion.

## CONCLUSION

For the reasons set forth above, Bristol and Local No. 8's motion is improper, untimely, and futile. The motion should therefore be denied in its entirety. In addition, because the motion is frivolous, Defendants respectfully request that the Court order Plaintiff to pay the attorneys' fees and costs that Defendants incurred in connection with opposing this motion.

Dated: May 12, 2014

Respectfully Submitted,

Vertex Pharmaceuticals Incorporated, Joshua Boger, Ph.D., Jeffrey Leiden, M.D., Ph.D., Peter Mueller, Ph.D., Paul Silva, Elaine Ullian, and Nancy J. Wysenski,

By their attorneys,

/s/ John F. Sylvia

John F. Sylvia, BBO #555581
Matthew D. Levitt, BBO #660554
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel.: (617) 542-6000
Fax: (617) 542-2241

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on May 12, 2014.

/s/ John F. Sylvia
John F. Sylvia