```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   CITY OF BRISTOL PENSION FUND,

 5                      Plaintiff,        Civil Action
                                          No. 12-11654-FDS
 6   V.
                                          May 23, 2014
 7   VERTEX PHARMACEUTICALS, INC.,
     et al.,                              11:02 a.m.
 8
                        Defendants.
 9   _____

10

11

12                 TRANSCRIPT OF MOTION HEARING

13          BEFORE THE HONORABLE F. DENNIS SAYLOR, IV

14                UNITED STATES DISTRICT COURT

15             JOHN J. MOAKLEY U.S. COURTHOUSE

16                    1 COURTHOUSE WAY

17                   BOSTON, MA  02210

18

19

20

21                DEBRA M. JOYCE, RMR, CRR
22                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
23               1 Courthouse Way, Room 5204
                      Boston, MA  02210
24                  joycedebra@gmail.com

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3   BETH A. KASWAN, ESQ.
     Scott & Scott
 4   The Chrysler Building
     405 Lexington Ave
 5   40th Floor
     New York, NY 10174
 6   212-223-6444

 7   AMANDA F. LAWRENCE, ESQ.
     ANDREA FARAH, ESQ.
 8   Scott & Scott LLP
     156 South Main Street
 9   Colchester, CT 06415
     860-537-5537
10
     FOR THE DEFENDANTS:
11
     JOHN F. SYLVIA, ESQ.
12   MATTHEW D. LEVITT, ESQ.
     Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
13   One Financial Center
     Boston, MA 02111
14   617-542-6000

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable F. Dennis Saylor, IV, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on May 23, 2014.)

THE CLERK:  In the matter of City of Bristol Pension Fund v. Vertex Pharmaceuticals, Inc., civil action 12-11654.

Would counsel please state your name for the record.

MS. KASWAN:  Good morning, your Honor.  Beth Kawsan with Scott & Scott for the plaintiffs.

MS. LAWRENCE:  Good morning, your Honor.  Amanda Lawrence also from Scott & Scott for the plaintiffs.

THE COURT:  All right.

MR. SYLVIA:  Good morning, your Honor.  John Sylvia from Mintz Levin, and with me at counsel table is Matthew Levitt.

MR. LEVITT:  Good morning, your Honor.

THE COURT:  Good morning, all.

This is a hearing on City of Bristol's motion for, I guess, to clarify and amend to permit filing of a second amended complaint and to allow Local No. 8 to intervene. Ms. Kaswan, it's your motion.

MS. KASWAN:  Yes, your Honor, thank you.

Your Honor, we have brought this motion because we

1    consider that this was the best procedure to obtain a result

2    that was just, speedy, and inexpensive.

3        We're asking to open the existing judgment and to file

4    an amended complaint and to intervene Local No. 8 IBEW as the

5    plaintiff in lieu of filing -- IBEW filing a new complaint,

6    which it could do next week within the statute of limitations

7    without regard to tolling under the securities law.

8        So that what we're facing here is that IBEW meet --

9    there's no question that IBEW has standing for this case.  The

11:04 10   proposed amended complaint is wholly consistent with this

11   Court's earlier decision.  The earlier decision, even if it

12   becomes final because the Rule 59(e) motion is denied, would

13   only be final with respect to the City of Bristol.  It would

14   not be final with respect to the class, there's no *res*

15   *judicata*, collateral estoppel, it's not law of the case.  And

16   even with respect to whether or not any of the legal or factual

17   analysis might have precedential value, every statement that

18   the Court made is wholly consistent with the proposed amended

19   complaint.

11:05 20       Unlike many of the cases that the defendant has cited,

21   this is not a situation in which the plaintiffs are becoming --

22   are coming before the Court under Rule 59(e) and 15-2 to file

23   an amended complaint belatedly because they sandbagged the

24   Court and wasted the Court's resources.  This is not a

25   situation where the plaintiffs have pocketed additional

evidence that the Court was unaware of.  There's nothing in the

proposed amended complaint that the Court hasn't already heard.

The allegations are merely streamlined versus the earlier

complaint, and also includes the stocks sale chart that

Ms. Lawrence presented at the hearing.

So there is nothing about what we are proposing to do

that would increase the costs on this Court, that is reflective

of any bad faith or dilatory conduct by either of the

plaintiffs or Scott & Scott.

IBEW has proposed to come into this case when the

appointed lead plaintiff faltered, when the Court determined

that for IBEW to protect its interests it would need to undergo

the burden and expense of serving as the standard bearer for

itself and also the class.  There's absolutely nothing wrong

with that, that's what's anticipated under the class action

rules, and particularly the PSLRA, is that there is a lead

plaintiff process, and then the lead plaintiff represents

interests of the class.  So that there is nothing dilatory

about that, there's nothing bad faith about that.  That's the

way this process is supposed to work.

And, your Honor, in this case -- nor is this a case in

which the proposed amended complaint is frivolous or even

marginal.  This is a highly meritorious securities fraud

complaint.  As this Court remarked at the earlier hearing, that

once you look at that stocks chart and that five out of six of

1     the insiders sold either on the day of the admittedly false

2     statement or within days thereafter, that is a classic scenario

3     for finding *scienter* or finding motive that contributes towards

4     *scienter*.

5            And in fact, your Honor noted that if we survive the

6     pleading standard, that the defendants would have trouble when

7     faced with a summary judgment motion.  Well, if we satisfy the

8     rules for summary judgment, your Honor, we clearly satisfy the

9     pleading requirements.

11:08 10            So this is a case in which there is no question there

11    is a false statement, there's no question that it was material,

12    there is no question that there is loss causation, there's no

13    question that the new plaintiff has standing.

14           The only remaining issue to decide on the second

15    amended complaint is whether or not there is *scienter*, and

16    *scienter* here is recklessness, a standard that the Court has

17    already described in its earlier opinion for failing to check

18    the -- essentially to check the math for the study results that

19    it was announcing.

11:09 20           So you have the defendants in this case announcing

21    revolutionary results, proposing to the market that the results

22    foretell billions of dollars in sales.  There's 20 test

23    subjects, and they don't calculate -- recalculate the math.

24    Even though the Chief Scientific Officer says he's never seen

25    results like this, and the results are inconsistent with the

1    other marker for an efficacious treatment; namely, this sweat

2    chloride.

3        So only those -- and then on the same day and days

4    thereafter, you have millions of dollars of stock sales by

5    these very same people.

6        So what you're looking at is a classic case of a

7    pump-and-dump scheme where the speakers had a duty to speak,

8    they had a motive not to check the information because the

9    uncertainty of the information inured to their own personal

11:11 10   benefit.  They didn't want to know the answer.  It's the

11   classic example of willful blindness.

12        Your Honor, none of the cases that have been cited by

13   the defendants would suggest that the result that we are

14   proposing should not be granted.  Every appellate court, 1st

15   Circuit or other Court of Appeals recognizes that there is

16   broad discretion in the District Court to decide whether to

17   alter its own judgment and permit amendment of the complaint.

18        All of the cases that have been submitted to this

19   Court, there is not a single case in which a District Court who

11:11 20   granted a Rule 59(e) motion and permitted amendment of the

21   complaint was reversed for altering its judgment.  Every case

22   deals with the scenario that the District Court, in looking at

23   all the facts and circumstances, and particularly in virtually

24   all of these cases, ones where the plaintiff have gamed the

25   system and decided to deny amendment of the complaint, and

1    that's just not the situation that we have here.  And there is

2    no reason to go down that path.  There is -- it's going to be

3    more expensive, we're going to have the delay of several months

4    if we have to file a new complaint and go through the whole

5    lead plaintiff process all over again.  That means new notices,

6    it means delay, it means potentially a new judge would have to

7    learn all of this science --

8              THE COURT:  Now you're really tempting me.

9              MS. KASWAN:  Or even if it's this Court that, again,

11:13 10   gets stuck with this case, at least now the facts are fresh in

11   this Court's mind.  And so even for this judge, or for you,

12   your Honor, it makes sense to deal with the merits of the

13   complaint now rather than start from the beginning.

14             And there is no prejudice to the defendants whatsoever

15   if we open this judgment and permit IBEW to come in with the

16   amended complaint, because the defendants are going to face

17   exactly the same claims and the same allegations next week.

18             Your Honor, I want to emphasize the next week portion

19   of this application, because the two years under the statute of

11:14 20   limitations for filing a new class action complaint without

21   taking advantage of any discovery or tolling rules will run

22   next Thursday.  So not to put any pressure on the Court --

23             THE COURT:  Thursday is May the 29th?

24             MS. KASWAN: Yes, your Honor.  Because that's when the

25   corrective disclosure was made, at least there is a good

1    argument that that would be the cutoff for the two years.

2    So --

3                THE COURT:  That's putting tolling aside or assuming

4    there is no tolling.

5                MS. KASWAN:  Yes, your Honor.

6                So that we're simply in a position of which procedural

7    process makes more sense, is less expensive, it's more timely,

8    puts less of a burden on the Court and the parties, and

9    there's, frankly, no reason to proceed the alternative way of

11:15 10   filing a new complaint.  It's going to be more expensive for

11   the defendants to go down that route than simply dealing with

12   this issue now.

13               In fact, your Honor, I did call my colleague and

14   propose that he stipulate to altering the judgment and the

15   filing of the proposed amended complaint and deem that the

16   existing papers where both sides have argued the futility issue

17   be considered to be the motion to dismiss so that no additional

18   filings would be necessary to resolve what the issue of whether

19   or not the second -- the proposed amended complaint passes

11:16 20   muster under the PSLRA.

21               So we have done everything we possibly can to make

22   this proceeding as efficient, as inexpensive, and to remove as

23   much of the burden as humanly possible.  So under those

24   circumstances, your Honor, this is not the case to punish

25   either of these plaintiffs or counsel and have them start over

1    on behalf of the class once more.

2          Thank you.

3          THE COURT:  All right.  Thank you.

4          Mr. Sylvia.

5          MR. SYLVIA:  Thank you, your Honor.

6          I think if you were to poll any of the defendants and

7    ask whether they've been prejudiced by being falsely accused of

8    committing securities fraud, I think you'd get a very different

9    answer than the plaintiff has said about no prejudice to the

11:17 10   defendants.  They have had this hanging over their head for a

11   year and a half, and there has to be finality, and your Honor

12   granted finality.

13          Plaintiffs have come in now and said, No, we'd like

14   another bite at the apple.  And whether you look at this motion

15   as a matter of process or substance, it is deficient.

16          On March 31, 2014, this Court rendered its opinion

17   dismissing the complaint, and the clerk closed this case.  The

18   case was over.  The plaintiff had a full and fair opportunity

19   to make their case, they were able to file an amended

11:17 20   complaint, and the standards aren't new, the PSLRA has been in

21   effect for 20 years now.  These plaintiffs know what it takes

22   to plead an actionable complaint.  They had their opportunity,

23   and they got to test it, and the Court deemed it insufficient.

24          And at this stage, once a case is closed, the option

25   of reopening a case is extremely limited.  You can either make

1   a motion to vacate a judgment under Rule 60, which the

2   plaintiffs have not done here, or you can make a motion for

3   reconsideration under Rule 59(e).  But Rule 59(e) isn't an

4   interim appeal.  It's a very limited remedy which this Court

5   has recognized in the past, the grant of which is extremely

6   rare.

7           And it is settled in this circuit -- one of the things

8   listening to my colleague's argument that I didn't hear is

9   looking at the standard.  The standard in the 1st Circuit for a

11:18 10  59(e) motion is either pointing out a manifest error of law, or

11  the presentation of newly discovered evidence.  There is no

12  manifest error of law cited at argument by my colleague, cited

13  in their motion papers, cited in their brief; and as they

14  indicated themselves right in the argument, there are no new

15  facts.  All they have added to the proposed second amended

16  complaint is the same chart that counsel handed up to the Court

17  during oral argument.

18          So because the plaintiff undisputedly and admittedly

19  does not allege a single error of law or allege a single new

11:19 20  fact that they have discovered, the motion must be denied.

21  Quite frankly, as a matter of process, your Honor, that should

22  end the matter.

23          Now, what the argument that I was hearing plaintiff's

24  counsel make is that somehow its unfair to punish the

25  plaintiff, the proposed intervenor or plaintiff's counsel.  And

that's not the standard under 59(e) in the 1st Circuit, but any

perceived unfairness, it's entirely of the plaintiff's own

making.  As your Honor knows, defendants flagged the standing

issue back in December of 2012 at the lead counsel motion

stage.  The Court determined that it was not the appropriate

time to address that issue, but certainly plaintiff's counsel

were on notice of a potential problem with their case, frankly,

the standing issue, that it was a potential problem, that would

have seem to have been obvious.

11:20   Now, plaintiff also admits that the new proposed

intervenor was aware of this case.  In their brief at page 12,

they admit that Local 8 was relying on Bristol.  So they must

have been aware of the case.  Local 8 is a sophisticated party

who has appeared as potential lead plaintiff counsel in other

actions.  Local 8 could have joined this case at any stage

prior to dismissal, they could have made the motion.  And Local

8 and its counsel had plenty of time to file a motion to

intervene if they thought that the plaintiff who had been

appointed lead plaintiff was inadequate to serve their

11:21   interest.  They also could have filed a timely motion to amend

before this Court granted the defendants' motion to dismiss.

It's interesting to note that counsel for plaintiff,

Bristol, was also counsel, at least since 2011, to Local 8.  So

it's not as if counsel didn't understand that there were

deficiencies with the case that we pointed out at the lead

plaintiff stage, we pointed out during the motion to dismiss, we pointed out at oral argument.

At no point along the continuum before this Court entered its order on March 31st did the plaintiff approach the Court either with filing a motion to amend the complaint, filing a motion to intervene or taking any other type of interim relief.  It is only now, after all the work has been done, the costs have been incurred, the time has been past, and the case is over that counsel want to have another do over.

And counsel, Bristol, and Local 8 made a strategic decision not to take any of these predismissal remedial actions.  Was that decision a tactical mistake?  Perhaps.  But the only injustice would be to allow the plaintiff to take a do over at the expense of the defendants, and it's the expense of their reputation, and it's at the expense of time, it's at the expense of further legal fees.

Now, that's just a matter of process why there is nothing in the law or the procedural posture of this case would warrant granting the relief sought.  It is not enough to say, Well, it would be more efficient to do it this way.  That's not the standard.  The fact is, are they entitled to the relief at this stage?  The law is clear that they have not made a showing, they are not.

But let me talk about substance, and I think this goes both to the point where they could just as easily file a new

1    action next week.  I think that would be misguided when walking

2    through the substance.  We can talk about why.

3          Now, counsel at argument indicated that the proposed

4    second amended complaint which merely adds the chart that was

5    handed up at oral argument is wholly consistent with this

6    Court's opinion.  Nothing could be further from the truth.

7          The chart does not in any way remedy this Court's

8    conclusion that the plaintiff had failed to plead a requisite

9    strong inference of *scienter*.  And first, in analyzing the

11:24 10   *scienter* issue, the Court concluded, "There are no specific

11    allegations (whether from a confidential witness, a document,

12    or otherwise) that any defendant actually knew that the

13    statements were false."  That's at page 19 of the Court's

14    opinion.  And what the Court went on to say from that, So there

15    is no allegation that any of the defendants had any actual

16    knowledge of the mistake.  Nothing has changed in this

17    complaint.  There isn't a single allegation in this complaint

18    contending that any of the defendants knew about the error.

19          Second, in addressing the alternative way to plead a

11:24 20   strong inference of *scienter*, the recklessness prong, the Court

21    properly applied the law of this circuit which holds that to be

22    viable on a recklessness theory, a complaint "must still

23    allege, with sufficient particularity, that the defendants had

24    full knowledge of the dangers of their course of action and

25    chose not to disclose those dangers to investors."  And in

1        applying that standard to the allegations of the first amended

2        complaint, this Court concluded, "That, too, is absent here."

3            The Court went on to look at an additive factor which

4        can be considered for *scienter*, and that is insider trading.

5        And as we noted in our motion to dismiss, although there are

6        situations where insider sales may provide supporting evidence

7        of *scienter*, the 1st Circuit, again, has clearly stated that,

8        "Insider trading cannot establish *scienter* on its own, but

9        rather can only do so in combination with other evidence."  And

11:25 10   that's the Miss. Pub. Employees' Ret. Sys. v. Boston Scientific

11       case, 649 F.3d at 29.

12           Here's there's nothing in the proposed second amended

13       complaint that disturbs this Court's conclusion that the

14       plaintiff had failed to allege evidence which would support a

15       strong inference of reckless conduct.  Nothing has changed.

16       All they have done is said, We've now addressed, allegedly

17       addressed, trading patterns.  Of course that does nothing to

18       disturb the Court's conclusion that with respect to defendant

19       Wysenski, that her trading was not unusual and did not support

11:26 20   a strong inference of *scienter* because she was planning to and,

21       in fact, did retire.

22           So -- and now it is abundantly clear from the argument

23       that the only theory that the plaintiff can even proceed on is

24       a recklessness theory, and I submit to the Court that insider

25       trading is irrelevant to a recklessness theory.  The premise of

a recklessness theory is that you didn't know about the alleged

misrepresentation but you should have.  Well, if you didn't

know, you can't also make a decision to sell securities based

upon that knowledge which you didn't have.  It's

counterintuitive.  So as it stands in the 1st Circuit, just

alleging insider sales cannot get a plaintiff over the pleading

hurdle.  Here you have the further issue that they are

proceeding on a recklessness theory and that just by definition

doesn't show evidence of any intentional conduct.

11:27 10          So, for those reasons, whether you look at it as a

matter of process or a matter of substance, the motion here is

frivolous.  And whether it is filed in this action or the

plaintiffs carry through with their threat to file a new

complaint next week, the complaint will still be frivolous and,

you know, if the plaintiffs do file a new action next week, we,

of course, will oppose that, and we will look to pass the

burden of the expense onto the plaintiffs because it's -- with

the Court's guidance here as to why the complaint already was

unmeritorious, nothing would change, whether it's a second

11:28 20 amended complaint in this action or whether the plaintiffs do

what is the only possible procedurally proper way, is to bring

a new action and have to go through the same process under the

PSLRA of lead counsel and lead plaintiff appointment.  That's

what the law requires.  They aren't entitled to a shortcut, and

that's, in fact, exactly what they are doing here.  They have

lost out and they have taken a gamble and they are now coming

back and trying to correct it after the fact and take a

shortcut around the requirements of the PSLRA, and we would

respectfully submit, your Honor, that their motion ought to be

denied.

We have asked that we be -- our client be compensated

for the attorney's fees in opposing this motion because, as my

counsel -- sister indicated, I did have a conversation

beforehand, I said I don't see how this motion has any basis

under 59(e), and it certainly doesn't correct the deficiencies

in the complaint, so that, in our view, it was frivolous.

Thank you.

THE COURT:  All right, thank you.

MS. KASWAN:  Your Honor, may I?

THE COURT:  Yes, quickly.

MS. KASWAN:  The first comment with respect to the

Rule 59(e) standard, and this is from the case ACA Financial

Guaranty Corp. v. Advest.  The statement by the court at page

55 says the following:  "Rule 59(e), while it authorizes

post-judgment motions to alter a judgment, does not state what

grounds would justify such an alteration."

The different tests that counsel has proposed to this

Court, and which you often see in many 59(e) cases, are

examples that can authorize a 59(e) opening or reconsideration

of a judgment.  However, the rule itself does not state what

1    the test is.  And in fact, 59(e), for most of Rule 59(e), it's
2    a rule for a new trial or for altering and amending a judgment.
3    That's a rule that applies from the first time that you file a
4    complaint through summary judgment and then through the end of
5    trial.  And what the 1st Circuit has said in Dartmouth Review
6    v. Dartmouth College is that as you move along that continuum,
7    the burden to obtain leave to amend increases.  So that where
8    we are now, which is simply at the first step of filing a
9    complaint, and this is not a situation where plaintiffs have
11:31 10   come in multiple times asking to amend the complaint, this is a
11   situation where we're right at the beginning of the lawsuit and
12   it makes sense to proceed along this way, and this Court has
13   complete discretion to take action that would be just, timely,
14   and inexpensive.

15        The other point that counsel made was that this was a
16   strategic decision to hang back and then make this motion.
17   Well, we -- the -- counsel certainly didn't do that because
18   there was no such plaintiff who was prepared to sue.

19        Now, IBEW could properly decide not to go out front in
11:32 20   every case -- or for every stock that it thought had a loss
21   attributable to fraud, that it would rely upon other funds and
22   lead plaintiffs to share that burden.  And to the extent that
23   they were then put in a position of watching their claims
24   disappear because another lead plaintiff was found to be
25   inadequate, that's entirely appropriate for it to act at that

1    point.

2              With respect to the *scienter*, I believe that counsel

3    is confusing two different points in the Court's decision.

4              When your Honor was discussing *scienter* in your

5    Honor's decision, you were referring to -- and this is page 19,

6    you state, "Plaintiff offers few concrete allegations in

7    support of its contention that defendants knowingly or

8    recklessly attributed the error to a third-party vendor."  That

9    was the May 29th statement.  Your Honor has not looked at or

11:33 10   commented on the adequacy of plaintiff's allegations that the

11   speakers at the press release on May 7th that was issued by the

12   insiders as the group or the statements during the conference

13   call were made either with actual knowledge or with

14   recklessness.

15             Your Honor, just like any other case, any other

16   securities case, it's very difficult for a plaintiff to go into

17   the mind of a speaker and say that person actually knew.  Even

18   when you're proving actual knowledge, you prove it through

19   circumstantial evidence.  So that's point one.

11:34 20            Point two is, with respect to recklessness, what we're

21   saying occurred here is that Dr. Mueller, the Chief Scientific

22   Officer, knew that the test results were suspicious.  And

23   rather than investigate whether or not his statements that he

24   was about to make were correct, he didn't check the information

25   because he didn't want to know if they were erroneous.  That's

1    a classic willful blindness test.  And he personally that same

2    day sold $4 million worth of stock.  So the benefit of not

3    checking whether or not his touting the test results were

4    accurate was $4 million.  That's a very large incentive for not

5    checking whether or not the numbers add up.  It could not have

6    been an easier task.  They had the data, they just didn't add

7    it up and check that their statements, which they knew were

8    unprecedented, made sense.  And for that they were rewarded

9    with $30 million worth of stock sales.

11:36 10           Now, with respect to Ms. Wysneski, the defendants have

11    attempted to assert into what is a pleading motion assertions

12    of fact that are not in the record.  There is nothing in the

13    record about Ms. Wysneski, quote-unquote, planning to retire.

14    What is in the record is that she abruptly retired in June with

15    no warning that that was what she was going to do after there

16    is a storm of criticism about the stock sales.  So what is more

17    plausible, right, that she was planning from the get-go to

18    retire or that the company, attempting to cut its losses,

19    pushed her out?  You had a senator complaining about insider

11:37 20   trading at this company.  And, your Honor, it's not in this

21    complaint, we will, if we are forced to, file a new one, will

22    put it in, that Ms. Wysneski was only 54 years old.  This is

23    not somebody 70 years old who's been planning for years to

24    retire.  There was no explanation given as to why she was

25    retired in the announcement.

1          So -- and, in fact, there's no reason to assume that

2     even the statement that she did, quote-unquote, retire was

3     true, as distinguished from whether or not she was terminated

4     and pushed out of the company.  All we know is that she left.

5          Now, with respect to the request for attorney's fees,

6     I would just note, your Honor, that there is only one person in

7     this courtroom who knowingly violated the Federal Rules of

8     Civil Procedure, and that is my colleague sitting at the next

9     table, because Rule 11 is very specific as to what a party

11:38 10  needs to do to demand sanctions under Rule 11.  It has to send

11    a letter, it has to provide 21-days' notice to his adversary to

12    correct the filing, it has to make a separate motion, can't

13    just put a request for Rule 11 sanctions in opposition papers

14    to another motion.

15         So -- and counsel specifically refers to Rule 11.  So

16    presumably he read Rule 11 and saw the procedural requirements.

17    So to the extent -- and just so the Court is clear, we're not

18    asking for sanctions for a sanctionable Rule 11 application,

19    because we don't want to distract this Court or waste this

11:39 20  Court's time with that type of nonsense.

21         All we are attempting to do is to proceed to assert

22    claims that are meritorious on their face in as efficient and

23    timely way as we're able to do it.

24         THE COURT:  All right, thank you.

25         MR. SYLVIA:  Your Honor, may I just respond to a

1    couple of those points?

2         THE COURT:  Very quickly.

3         MR. SYLVIA:  I can be very brief.

4         The PSLRA, as plaintiff counsel knows, has a

5    requirement that upon dismissal of an action that the Court is

6    to make a finding whether or not any type of sanctions are

7    appropriate.  There actually is no requirement for an

8    independent motion, it's part of the statute.  So for that

9    reason, the Court can proceed on as to whether this is a

11:40 10    frivolous motion or not.

11         Most of what my colleague said really sounded like a

12    rehash of the motion to dismiss argument, where we're here

13    clearly on a more limited basis than on a motion to dismiss,

14    and really it gets back to all of their other things, what they

15    could do in another complaint, doesn't answer the question as

16    to whether they have complied with what is clear in the 1st

17    Circuit is the standard under Rule 59(e).

18         They cited a number of cases, but of course the most

19    recent of those cases is a 2012 case by the 1st Circuit, which

11:40 20    is the Markel case, and says, quote -- a plaintiff "must either

21    clearly establish a manifest error of law or must present newly

22    discovered evidence."  Counsel has not attempted to argue that

23    they have done either of those things.  Therefore, the motion

24    should be denied, and the notion they can get around Rule 59(e)

25    by -- well, we should be allowed to amend because it's early in

1    the case, the 1st Circuit has also held clearly that once a

2    motion to dismiss has been granted, the case is a dead letter,

3    there's nothing to amend.

4         So we would ask that the Court deny plaintiff's motion

5    in its entirety.

6         Thank you.

7         THE COURT:  All right.  Thank you.

8         All right.  Here's how I see this.

9         I do not believe that I can do anything, including

11:41 10  permitting amendment of the complaint under Rule 15, unless I

11   set aside or amend the judgment under Rule 59 or Rule 60.

12   Plaintiff is moving under Rule 59, not Rule 60, is seeking to

13   alter or amend the judgment.  And as I see it, plaintiff has

14   not shown good cause under Rule 59(e) to do so.  Plaintiff has

15   not shown a manifest error of law or newly discovered evidence.

16   Even assuming that the standard also permits amendment or

17   alteration based on an intervening change in law or to prevent

18   a manifest injustice, I don't believe that that showing has

19   been made.  And certainly Rule 59(e) cannot be used as an end

11:42 20  run around the other rules or requirements of civil procedure,

21   whether in Rule 15, Rule 12, or otherwise.

22        The change here, what is different today, is that

23   Local 8 has come forward, a plaintiff who may very well have

24   standing to litigate all of the claims here.  That proposed

25   intervention, if that's the right word, is, I believe,

 1    untimely.  The issue of whether the City of Bristol had

 2    standing and whether there was an issue as to its standing has

 3    been brewing for some time, even going back to appointment of

 4    lead counsel.  Local 8 did not seek to intervene, did not seek

 5    to amend the complaint, or plaintiff did not seek to amend the

 6    complaint.  There are circumstances certainly under which a

 7    motion to dismiss under Rule 12(b)(6) can be countered with a

 8    proposed amendment to the complaint, and that did not happen

 9    here.

11:44 10          So the motion will be denied.

 11          To be clear, the dismissal of the City of Bristol

 12    claim was with prejudice or intended to be with prejudice.  It

 13    was intended as a final judgment.  I make no finding of any

 14    kind whether Local 8 has standing, whether it has -- if it

 15    files on or before May 29th, whether there is a limitations

 16    issue.  I make no finding as to whether a dismissal of the City

 17    of Bristol claim in part for lack of standing has any issue

 18    preclusion or claim preclusion effect on another lawsuit.  For

 19    that matter, I make no finding on the merits as to what

11:44 20    happened or did not happen on May 7th or otherwise.  I am

 21    issuing a ruling only as to what is on my plate as to the City

 22    of Bristol case, and that is in substance a procedural

 23    decision, not a substantive one.

 24          If Local 8 does file another very similar complaint,

 25    whether it's assigned to me or not, these issues, if raised,

1    will be litigated in due course.  I, of course, recognize that

2    there is inconvenience and expense and delay in proceeding that

3    way, assuming that is how we proceed, but sometimes that's just

4    the way it is.

5         And finally, as to the defendants' request for

6    sanctions, I'm going to deny it, whether brought under the

7    PSLRA, Rule 11 or otherwise.  I'm going to leave matters where

8    they are and each party to bear their own legal fees, costs,

9    and expenses.  So I will deny that and leave things where they

11:46 10   are.

11        So the motion of plaintiff is denied, that is, the

12   motion under Rule 59(e) and otherwise; and we will leave for

13   another day what, if anything, will happen if there is another

14   lawsuit.

15        Anything else?

16        Ms. Kaswan?

17        MS. KASWAN:  No, your Honor.

18        THE COURT:  Mr. Sylvia?

19        MR. SYLVIA:  No, your Honor, thank you.

11:46 20   THE COURT:  All right.  To counsel who are from --

21   well, to everyone, have a good weekend.  To counsel from New

22   York, one of my least favorite things to do is to take the

23   shuttle, it's even worse on Friday, and this being Memorial Day

24   Friday, if that's what you're doing, good luck and safe travels

25   to you.

1          MS. KASWAN:  Thank you, your Honor.  And thank you for

2     your time.

3          THE COURT:  All right.  And I may see you all, I may

4     not, we'll see how that plays out, but, in any event, have a

5     good weekend, all.

6          Thank you.

7          (Court adjourned at 11:47 a.m.)

8          - - - - - - - - - - - -

9                         CERTIFICATION

10         I certify that the foregoing is a correct transcript

11    of the record of proceedings in the above-entitled matter to

12    the best of my skill and ability.

13

14

15

16    /s/Debra M. Joyce_____          May 27 2014_____
      Debra M. Joyce, RMR, CRR          Date
17    Official Court Reporter

18

19

20

21

22

23

24

25